UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GREG WOLFKIEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-0834-B |
| | § | |
| SELENE FINANCE, LP, and U.S. | § | |
| BANK TRUST NATIONAL | § | |
| ASSOCIATION solely as owner | § | |
| trustee for RCF ACQUISITION | § | |
| TRUST, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss (Doc. 4), filed by Defendants Selene Finance, LP ("Selene") and U.S. Bank Trust National Association ("U.S. Bank") (collectively "Defendants"). Having reviewed the briefing and applicable law, the Court **GRANTS** Defendants' Motion. The Court **DISMISSES** Plaintiff Greg Wolfkiel's claim for breach of contract **with prejudice**. All other claims are **DISMISSED without prejudice**. Wolfkiel has **21 DAYS** from the date of this Order to amend his complaint as to the claims dismissed without prejudice.

### I.

### BACKGROUND

This is a civil action brought by a property owner, Wolfkiel, against his loan servicer, Selene, and against US Bank Trust National Association ("U.S. Bank") as the owner trustee of the parties' original loan agreement. Wolfkiel claims that—through events leading up to an attempted foreclosure sale—Selene failed to comply with Texas foreclosure procedures. Doc. 1-1, Original Pet.,

11-12.[1] Wolfkiel further claims that Selene failed to comply with various federal requirements, breached the parties' agreement, and was negligent. *See id.* For these alleged actions, Wolfkiel seeks injunctive relief against future foreclosure attempts, actual damages, and other relief. *Id.* at 19.

Wolfkiel is the owner and resident of real property in Dallas, Texas (the "Property"). *Id.* at 12. In 2004, to finance his purchase of the Property, Wolfkiel executed a note ("the Note") secured by a deed of trust in exchange for a loan. *See* Doc. 4-1, Ex. A. Due to personal financial hardship in 2023, Wolfkiel defaulted on his obligations under the Note. *See* Doc. 1-1, Original Pet., 12. At the time of default, Selene was the mortgage servicer on the Note. *Id.*

Regarding events post-default, Wolfkiel alleges that, because he did not receive a notice to cure, it is "highly likely that [Selene] did not send a 20-day notice to cure." *Id.* Wolfkiel also contends that although Selene approved him for loan modifications in late 2024—and informed him of such approval via email—Selene never provided the terms of the modification or any other documentation related to it. *Id.* But Selene's alleged "approval" email itself only states that Wolfkiel was approved for "a trial modification." *Id.*, Email from K. Davis (Nov. 18, 2024), 66. Subsequent emails between Wolfkiel and his counsel summarize that Selene informed Wolfkiel via phone call that, under the trial modification, he would be required to make monthly payments of $5,800 and that documentation of the modification had been sent (but not received). *Id.*, Email from G. Wolfkiel (Nov. 26, 2024), 66; *id.*, Email from S. Dryzer (Nov. 26, 2024), 66. Wolfkiel neither provides nor alleges other details of the purported loan modification. As alleged, several months after the email, Selene advised Wolfkiel to reapply for a loan modification, but when Wolfkiel did so, Selene

---

[1] For materials included in Document 1-1, which contains Defendants' exhibits to the Notice of Removal, page number references are to the ECF page numbers of Document 1-1 rather than the individual exhibits therein.

informed him that there was no longer sufficient time for modification given a pending foreclosure sale then scheduled for April 1, 2025. *Id.*, Original Pet., 12-13, 18. Wolfkiel does not allege whether he made payments under the trial modification or made other efforts to cure his default. Nor does Wolfkiel explain when or why the Property was posted for foreclosure sale in 2025. Lastly, Wolfkiel contends that, as of October 2024, Selene stopped sending him monthly mortgage statements. *Id.* at 13.

Wolfkiel brought the present action in state court in March 2025, seeking to postpone Selene's scheduled foreclosure sale. *Id.* at 10. Based on the above alleged events, Wolfkiel asserts five causes of action, seeking damages and injunctive relief. First, Wolfkiel claims that in failing to send a 20-day notice to cure, Selene violated section 51.002 of the Texas Property Code and thereby breached the parties' loan agreement. *Id.* at 14. Second, Wolfkiel claims that in failing to provide monthly mortgage statements after October 2024, Selene violated the Truth in Lending Act ("TILA"). *Id.* at 14-15. Third, Wolfkiel claims that because Selene informed Wolfkiel of his approval for modification then failed to provide documentation or inform him of any problem with that modification, Selene should be estopped from reneging on that promise. *Id.* at 15-16. Fourth, Wolfkiel claims that Selene acted negligently in its communications regarding the loan modification. *Id.* at 16-17. Fifth, Wolfkiel claims that Selene violated the Real Estate Settlement Procedures Act ("RESPA") by failing to provide accurate information to Wolfkiel regarding foreclosure and loss mitigation options, failing to provide specific reasons for denial of loan workout alternatives prior to posting the Property for foreclosure, imposing fees or charges on Wolfkiel without a reasonable basis, and scheduling a foreclosure sale while a completed loan modification application was pending. *Id.* at 17.

Wolfkiel also requested a temporary restraining order, temporary injunction, and permanent injunction. *Id.* at 18-19. On March 27, 2025, the Texas district court granted Wolfkiel's application for injunctive relief and issued a temporary restraining order, which prevented Selene's then-pending foreclosure sale from taking place. *See id.*, Ex. 4, 78-79. Wolfkiel does not allege, and the record does not suggest, that any other foreclosure sale on the Property is currently scheduled or pending. Defendants removed the action to this Court on April 4, 2025. *See generally* Doc. 1, Notice. Now, Defendants move the Court to dismiss Wolfkiel's complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Doc. 4, Mot., 1. The Court considers the Motion below.

## II.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(h)(3) requires a court to dismiss a plaintiff's complaint when the court determines it lacks subject-matter jurisdiction. Challenges to subject-matter jurisdiction are made under Rule 12(b)(1) and "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A "court should consider . . . Rule 12(b)(1) jurisdictional attack[s] before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Id.* (citation omitted). "Ordinarily, when a claim is dismissed for lack of jurisdiction, including lack of standing, it should be without prejudice." *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 452 (5th Cir. 2022) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows defendants to move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Under Federal Rule of

Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## III.

## ANALYSIS

Defendants argue that each claim should be dismissed for failure to state a claim under Rule 12(b)(6). Doc. 4, Mot., 1. However, because standing appears to be an issue, the Court must address whether Wolfkiel has alleged standing to bring each of his claims before considering the merits. *See Ramming*, 281 F.3d at 161. Because the Court finds that Wolfkiel lacks standing to bring its TILA, promissory estoppel, negligence, and RESPA claims, it dismisses them without prejudice. Turning to the merits of Wolfkiel's remaining claim for breach of contract, Wolfkiel fails to properly state a valid claim for breach of contract, and consequently, the Court grants Defendants' Rule 12(b)(6) motion as to that claim and dismisses it with prejudice.

A.    *Wolfkiel Lacks Standing to Bring his TILA, Promissory Estoppel, Negligence, and RESPA Claims*

The Constitution of the United States limits the jurisdiction of federal courts to "Cases" and "Controversies." Art. III, § 2. As a sorting mechanism, separating out cases and controversies subject to judicial review from those that are not, courts invoke the doctrine of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "A plaintiff must demonstrate standing for each claim she seeks to press and have standing separately for each form of relief sought." *Latitude Sols., Inc. v. DeJoria*,

922 F.3d 690, 695 (5th Cir. 2019) (citation modified). Without standing, this Court lacks jurisdiction to hear a given claim.

To establish standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a likelihood that the injury "will be 'redressed by a favorable decision.'" *Id.* (citations omitted). Plaintiffs must clearly allege "facts demonstrating each element" of standing. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016) (citation modified). To show an injury in fact, the injury must be (1) concrete and particularized, and (2) actual or imminent—not "conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations omitted). To be actual or imminent, the injury "must have already occurred or be likely to occur soon." *FDA v. All. for Hip. Med.*, 602 U.S. 367, 381 (2024) (citation omitted). "An injury in fact can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few common examples." *Id.* To show a causal connection between the injury and the conduct complained of, the injury must be "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (citation modified) (citing *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)).

In the context of a statutory violation, allegations of a "bare procedural violation" are insufficient where "divorced from any concrete harm." *Spokeo*, 578 U.S. at 341; *see id.* at 342 (noting that violations of procedural requirements—such as failing to provide some required notice to a consumer—may result in no harm).

"Mootness is the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) (internal

quotation marks and citation omitted). "Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Id.*

### 1. Wolfkiel's TILA Claim

Wolfkiel lacks standing to bring his TILA claim. Wolfkiel alleges that in failing to provide monthly mortgage statements after October 2024, Selene violated TILA. Doc. 1-1, Original Pet., 14-15. Specifically, TILA requires mortgage servicers to provide consumers with periodic statements for each billing cycle. 15 U.S.C. § 1638(f); *see* 12 C.F.R. § 1026.41(a)(2). However, because Wolfkiel fails to identify any concrete harm attributable to Selene not sending him mortgage statements, he fails to allege more than a "bare procedural violation." *See Spokeo*, 578 U.S. at 341. At no point does Wolfkiel allege how not receiving certain monthly mortgage statements affected his property or monetary interests, nor does Wolfkiel claim that had the statements been received, his condition or defaulted status would have been materially changed. Wolfkiel's naked assertion that he "suffer[ed] actual and statutory damages," Doc. 1-1, Original Pet., 15, does not satisfy the requirement of a "concrete and particularized" injury in fact to create standing to bring suit, *Lujan*, 504 U.S. at 560.

### 2. Wolfkiel's Promissory Estoppel Claim

#### i.    *Proper construction of Wolfkiel's promissory estoppel claim*

Wolfkiel's original petition does not clearly identify the promise at issue in his promissory estoppel claim. Thus, before determining whether standing has been alleged, the Court must construe Wolfkiel's general theory of the claim. To properly allege a claim for promissory estoppel under Texas law, a plaintiff must allege "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *Corpus Christi Day Cruise, LLC v. Christus Spohn Health Sys. Corp.*, 398 S.W.3d 303, 311 (Tex. App.—Corpus Christi–Edinburg

2012, pet. denied) (citations omitted). "A plaintiff asserting promissory estoppel must show an actual promise that is *sufficiently specific and definite* so that it would be reasonable and justified for the promisee to rely on it as a commitment to future action." *Gano v. Diaz*, No. 03-17-00119-CV, 2018 WL 3150988, at *7 (Tex. App.—Austin June 28, 2018, no pet.) (emphases added) (internal quotations and citations omitted).

Wolfkiel first must show a promise. Wolfkiel points to an email from Selene that Wolfkiel was "approved" for a "trial modification." Doc. 1-1, Email from K. Davis (Nov. 18, 2024), 66. While brief, the email shows that Wolfkiel had been approved for some unspecified form of loan modification on a trial basis. Wolfkiel seeks to enforce the "promise that he had been approved" in this email. Doc. 1-1, Original Pet., 16. While it is difficult to pinpoint exactly what "specific" and "definite" promise Wolfkiel is alleging, the Court identifies two possible constructions: (1) that Selene promised a particular loan modification upon which Wolfkiel relied; or (2) that Selene promised that Wolfkiel was *approved* for loan modification, and Wolfkiel relied on that approval status. The Court now evaluates the viability of the promissory estoppel claim based on each possible construction.

Under the first construction, Wolfkiel plainly does not allege sufficient detail of the loan modification for a promissory estoppel claim. For a valid claim, Wolfkiel would need to show that that the loan modification was "sufficiently specific and definite so that it would be reasonable and justified for [Wolfkiel] to rely on it." *Gano*, 2018 WL 3150988 at *7. Here, the only detail of the trial modification even alleged is that it would involve monthly payments of $5,800. Doc. 1-1 Email from G. Wolfkiel (Nov. 26, 2024), 66. There are no allegations related to how the modification would affect Wolfkiel's defaulted status, whether the trial modification would lead to a permanent

modification, whether the trial modification would preclude a foreclosure sale six months later, or any other allegations to provide specific and definite details of a loan modification upon which Wolfkiel could have relied. Nevertheless, Wolfkiel asks the Court to enforce Selene's promise "to complete the modification and bring [Wolfkiel's] loan current under the modification agreement." *Id.*, Original Pet., 16. Construing the alleged promise in that form—as Wolfkiel appears to ask the Court to do—it is plainly not definite or specific enough for a valid claim of promissory estoppel. *See Gano*, 2018 WL 3150988 at *7. The Court cannot "complete the modification" or grant Wolfkiel other relief "under the modification agreement" where Selene never indicated what exact modification was promised. *See* Doc. 1-1, Original Pet., 16.[2]

Under the second possible construction, Wolfkiel's promissory estoppel claim fairs somewhat better. While the details of the trial modification are not presented, Wolfkiel does allege, and the attached email demonstrates, that Selene promised approval for some form of trial modification. *See id.*, Email from K. Davis (Nov. 18, 2024), 66. Thus, while still vague, the email is sufficiently "specific and definite" that it was "reasonable and justified" for Wolfkiel to assume he was approved and need not apply again to avoid foreclosure in the near future. *See Gano*, 2018 WL 3150988 at *7. Thus, Wolfkiel's only plausible claim for promissory estoppel must be construed as a promise of approval status.

ii.    *Properly construed, Wolfkiel's promissory estoppel claim is moot*

As discussed above, Wolfkiel's claim for promissory estoppel can reasonably only be that Selene informed him in November 2024, that he had been "approved for a trial modification." Doc.

---

[2] It is also conceivable that this construction would be barred by the statute of frauds, *see* Tex. Bus. & Com. Code § 26.02(b), but the Court need not reach that question as Wolfkiel does not properly allege a promise.

1-1, Email from K. Davis (Nov. 18, 2024), 66. In reliance on Selene's promise of approval, Wolfkiel abstained from reapplying for another loan modification until Selene informed him that he needed to reapply in March 2025—at which point it was too late to obtain a modification before the scheduled foreclosure sale. *Id.*, Original Pet., 15-16. However, that foreclosure sale never occurred, as it was precluded by the Texas state court's temporary restraining order, entered in March 2025. *Id.*, Ex. 4, 78-79. Nor does Wolfkiel allege, or the record suggest, that there is another pending foreclosure sale of the Property. With no pending foreclosure sale, Wolfkiel would no longer be precluded from reapplying for loan modification. Thus, the circumstances creating the controversy here—that Wolfkiel ran out of time to reapply for loan modification due to the timing of a scheduled foreclosure sale—are no longer present, at least not on the facts before the Court. Wolfkiel's promissory estoppel claim, even as characterized most favorably to Wolfkiel, no longer presents an actual controversy and is therefore moot. *See Carmouche*, 449 F.3d at 661.

3. <u>Wolfkiel's Negligence Claim</u>

Wolfkiel lacks standing to bring his negligence claim. Wolfkiel claims that Selene acted negligently in its communications regarding loan modification. Doc. 1-1, Original Pet., 16-17. Specifically, Wolfkiel claims that Selene was required to inform him of any changes or modifications to his loan, that Selene falsely represented that he was approved for modification and that documents were coming, and that Selene failed to provide information on the loan. *Id.* According to Wolfkiel, Selene's actions resulted in him "facing the foreclosure of his primary residence and all of the costs, both economic and emotional, that go along with that experience." *Id.* at 17. But Wolfkiel's alleged injury—the threat of foreclosure—is not "fairly traceable to the challenged action," which is Selene's alleged negligence in communicating about potential loan modifications. *See Lujan*,

504 U.S. at 560. Wolfkiel was already in default when loan modification discussions began. *See* Doc. 1-1, Original Pet., 12, 14. Any impending foreclosure is the result of Wolfkiel's default, not what Selene communicated regarding loan modification. There is no alleged basis to presume that but for those miscommunications, Wolfkiel would not have been in the same situation. To satisfy the injury-in-fact and causation standing requirements for his negligence claim, Wolfkiel must have presented some injury resulting directly from the allegedly negligent miscommunications regarding loan modification. As Wolfkiel has not so alleged, he has not demonstrated standing to seek relief for that conduct.

Moreover, even if Wolfkiel's alleged injury is taken as the lost opportunity to reapply for loan modification or if he is somehow deemed to have satisfied the causation requirement for injury of facing foreclosure, Wolfkiel's negligence claim is moot because, as with Wolfkiel's promissory estoppel claim, the foreclosure sale did not take place, and Wolfkiel is free to apply for trial modification now that there is no longer a pending sale. *See Carmouche*, 449 F.3d at 661 (explaining that an action is moot where circumstances eliminate an actual controversy after the commencement of the lawsuit).

4. <u>Wolfkiel's RESPA Claim</u>

Wolfkiel claims that Selene violated RESPA by failing to provide accurate information to Wolfkiel regarding foreclosure and loss mitigation options, failing to provide specific reasons for denial of loan workout alternatives prior to posting the Property for foreclosure, and imposing fees or charges[3] on Wolfkiel without a reasonable basis. Doc. 1-1, Original Pet., 17; *see* 12 C.F.R. § 1024.39; § 1024.41. Wolfkiel further contends that the then-pending foreclosure sale violated the

---

[3] However, Wolfkiel does not specify what fees or charges Selene allegedly imposed without a reasonable basis.

"Dual Tracking Provisions" of RESPA because it was scheduled while Wolfkiel's completed loan modification application was still pending. Doc. 1-1, Original Pet., 17; *see* § 1024.41(g).

While Wolfkiel alleges "bare procedural violation[s]," *see Spokeo*, 578 U.S. at 341, the Petition does not tie them to any concrete injury. Wolfkiel claims, in response to the Motion, that he has alleged damages in the form of "the very real potential loss of a unique property that is Plaintiffs [sic] homestead, the likely irrecoverable loss of Plaintiffs [sic] equity, attorney fees, and any and all fees and costs charged to Plaintiff due to the foreclosure and the filing of this lawsuit that was necessitated by Defendants [sic] many failures in this case." Doc. 7, Resp., 9. However, none of this is obviously a result of the alleged RESPA violations. Wolfkiel was already in default at the time of these alleged violations. *See* Doc. 1-1, Original Pet., 12, 14. And to trace the alleged RESPA violations to the foreclosure sale itself, Wolfkiel must allege how those violations created a risk of foreclosure that was not already present. Moreover, "[i]t is fundamental that no plaintiff may claim as injury the expense of preparing for litigation, for then the injury-in-fact requirement would pose no barrier." *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 611 (5th Cir. 2017). Thus, the injury-in-fact analysis does not consider fees related to bringing the present action. *See id.*

Because Wolfkiel lacks standing to bring his TILA, promissory estoppel, negligence, and RESPA claims, this Court has no jurisdiction to hear them. Therefore, those claims are dismissed without prejudice.

B.    *Wolfkiel Does Not State a Claim for Breach of Contract*

In Texas, it is a well-established rule that "a party to a contract who is himself in default cannot maintain a suit for its breach." *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (citations omitted). The Fifth Circuit has applied this rule to mortgagors in default on numerous occasions.

*See, e.g., Payne v. Wells Fargo Bank Nat'l Ass'n*, 637 Fed. App'x 833, 836 (5th Cir. 2016) (citing *Dobbins*, 785 S.W.2d at 378) (other citation omitted); *Golden v. Wells Fargo Bank, N.A.*, 557 Fed. App'x 323, 327-28 (5th Cir. 2014) (citation omitted); *Stevens v. Deutsche Bank Nat'l Tr. Co.*, 570 Fed. App'x 402, 403 (5th Cir. 2014) (citation omitted); *Water Dynamics, Ltd. v. HSBC Bank USA, Nat'l Ass'n*, 509 Fed. App'x 367, 369 (5th Cir. 2013) (citation omitted).[4] Here, Wolfkiel asserts that in failing to provide a 20-day notice, Defendants breached the parties' loan agreement. Doc. 1-1, Original Pet., 14. However, Wolfkiel was himself already in default under the parties' agreement, and thus "cannot maintain a suit for its breach." *See Dobbins*, 785 S.W.2d at 378.

Wolfkiel contends that Texas law does not support this result because "the right of a grantor to a deed of trust to have its provisions strictly complied with to effect a valid foreclosure sale is absolute." Doc. 7, Resp., 4 (citing *Harwath v. Hudson*, 654 S.W.2d 851, 854 (Tex. App.—Dallas 1983, writ ref'd n.r.e.)). But *Harwath* was not considering a breach of contract claim. *See* 654 S.W.2d at 852. There, the court was presented with a *wrongful foreclosure claim*, brought *after* the foreclosure sale at issue had taken place. *Id.* Indeed, none of Wolfkiel's cited "long-standing case law throughout Texas," Doc. 7, Resp., 4-5, addresses breach of contract at all, let alone breach of contract claims brought by a mortgagor in default. Wolfkiel, ignoring his own cited authority, claims preventing breach of contract claims by defaulted mortgagors would free mortgagees from all procedural obligations in event of default. *Id* at 5-6. This is not the case. Foreclosures conducted in violation of

---

[4] Wolfkiel contends that unpublished Fifth Circuit cases should not be considered. Doc. 7, Resp., 4. While unpublished Fifth Circuit cases rendered after January 1, 1996, like decisions from other Circuits, are not controlling authority, "they may be considered persuasive authority." *United States v. Johnson*, 619 F.3d 469, 473 n.3 (5th Cir. 2010) (citation omitted). Here, given the volume of Fifth Circuit decisions reaching this conclusion, and the dearth of cases standing for a contrary proposition, the Court considers them highly persuasive.

Texas law can be properly addressed with a wrongful foreclosure claim. *See, e.g.*, *Harwath*, 654 S.W.2d at 852.

Because Wolfkiel breached the parties' agreement first, he cannot maintain an action for subsequent breach of contract on that same agreement. Wolfkiel's breach of contract claim is therefore dismissed with prejudice.[5]

C.    *Amendment of Pleadings*

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. § 15(a)(2). "Whether leave to amend should be granted is entrusted to the sound discretion of the district court, and that court's ruling is reversible only for an abuse of discretion." *Young v. U.S. Postal Serv. ex rel. Donahoe*, 620 Fed. App'x 241, 245 (5th Cir. 2015). "Denial of leave to amend is appropriate where there is no indication that amendment would cure the defects in a complaint." *Id.*

Per the above analysis, the Court dismisses Wolfkiel's TILA, promissory estoppel, negligence, and RESPA claims without prejudice. Finding that the defects identified in those claims *may* be curable,[6] the Court grants Wolfkiel 21 days to amend his complaint to address those deficiencies. However, the Court dismisses Wolfkiel's breach of contract claim with prejudice and without leave to amend.

---

[5] Wolfkiel also requests declaratory relief that Defendants cannot foreclose on the Property due to the lack of a 20-day notice to cure. *See* Doc. 1-1, Original Pet. ¶ 28. However, as the Court is presented with no facts to suggest that a foreclosure sale is imminent in the next 20 days, and the prior foreclosure sale did not take place, this claim is not ripe for decision. *See Carmouche*, 449 F.3d at 661.

[6] At this time, the Court expresses no opinion on other arguments raised for dismissal in Defendants' Motion.

## IV.

## CONCLUSION

Defendants' motion to dismiss is **GRANTED**. Wolfkiel's TILA, promissory estoppel, negligence, and RESPA claims are **DISMISSED without prejudice**. Wolfkiel's breach of contract claim is **DISMISSED with prejudice**. Wolfkiel has **21 days** from the date of this order to amend his complaint as to all claims dismissed without prejudice.

SO ORDERED.

SIGNED: November 10, 2025.

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE